

**FILED**

**August 26, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 7:15 AM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Timeka Smith, | ) Docket No.: 2015-01-0101 |
| Employee, | ) |
| v. | ) State File No.: 28566-2015 |
| | ) |
| Chattanooga Regional Transportation Authority, | ) |
| Employer, | ) Date of Injury: April 10, 2015 |
| And | ) |
| | ) |
| Tennessee Municipal League Risk Management Pool, | ) |
| TPA/Insurance Carrier. | ) Judge: Thomas Wyatt |
| | ) |
| | ) |

---

## EXPEDITED HEARING ORDER FOR TEMPORARY PARTIAL DISABILITY AND MEDICAL BENEFITS

---

THIS CAUSE came on for hearing before the undersigned Workers' Compensation Judge on August 4, 2015, upon the Request for Expedited Hearing filed by Timeka Smith, the employee, on July 17, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the employer, the Chattanooga Regional Transportation Authority (CARTA), is obligated to provide medical and temporary partial disability benefits. Considering the positions of the parties, the applicable law, the testimony of in-person witnesses, and the exhibits admitted into evidence, the Court concludes that Ms. Smith is entitled to the requested temporary disability and medical benefits.

## ANALYSIS

### Issues

The parties marked numerous issues on the Dispute Certification Notice (DCN) issued in this claim. Even if marked on the DCN, the Court did not decide an issue

1

unless the parties presented it for determination at the Expedited Hearing. The parties presented the following issues for determination at the Expedited Hearing:

1. *Whether Ms. Smith sustained an injury arising primarily out of and in the course and scope of employment;*

2. *Whether Ms. Smith is entitled to an award of temporary partial disability benefits; and*

3. *Whether Ms. Smith is entitled to medical benefits.*

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

1. Affidavit of Timeka Smith;
2. Affidavit of Michelle Vickers with the following exhibits:
   - First Report of Injury;
   - Choice of Physician form (C-42);
   - May 7, 2015 letter from Ms. Vickers to Dr. Terry Smith;
   - Records of Occupational Health Services/Dr. Terry Smith;
   - May 1, 2015 denial letter; and
   - Notice of Denial of Claim (C-23).

3. Wage Statement;
4. Job Description (marked for identification only);
5. Dr. Smith's July 8, 2015 causation report;
6. Records of Occupational Health Services/Dr. Smith;
7. Causation report of Dr. Abdul Hafiz Eletr with attached article entitled "Diesel Exhaust";
8. Records of Chattanooga Neurology Associates, PLLC/Dr. Eletr;
9. Records of Premiere Health Care;
10. Records of Parkridge Medical Center;
11. Records of Parkridge Medical Center (unsigned records marked for identification purposes only);
12. Statement of Activity Work Status forms;
13. CARTA Memo;
14. Work Order;
15. Vehicle Repair History; and
16. Gillig Training booklet.

The Court designated the following as the technical record:

2

- Petition for Benefit Determination (PBD), filed May 18, 2015;
- Dispute Certification Notice (DCN), filed June 30, 2015;
- Request for Expedited Hearing (REH), filed July 17, 2015; and
- Employer's Response in Opposition to Employee's Request for Expedited Hearing, filed July 23, 2015.

The Court did not consider attachments to the above-listed exhibits and filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above exhibits and filings, or any attachments to them, as allegations unless established by the evidence.

The following witnesses provided in-person testimony:

- Ms. Smith;
- Ronald Smith;
- Lyndra Robinson;
- Duan Bush;
- David Smith;
- June Atkins; and
- Ronnie Hendrix.[1]

## History of Claim

Ms. Smith is a thirty-six-year-old resident of Chattanooga, Hamilton County, Tennessee. (*See* PBD.) She has operated CARTA buses since 2007.

On April 19, 2015, CARTA assigned Ms. Smith to operate Bus 502. (Ex. 1 at 1.) Shortly after she began her route, Ms. Smith smelled fumes inside the bus. *Id.* She testified that the bus eventually filled up with fumes. *Id.* Ms. Smith reported the fumes to CARTA's dispatcher, Duan Bush. *Id.* Mr. Bush checked with CARTA's shop and advised Ms. Smith it was safe to continue driving the bus. *Id.* Ms. Smith testified Mr. Bush told her to shut the windows so the bus could "regenerate." *Id.*

Ms. Smith continued on her route approximately fifteen minutes until she began experiencing light-headedness, dizziness, headaches, difficulty breathing, and nausea. (Ex. 1 at 2.) Ms. Smith stopped the bus when she needed to exit and vomit. *Id.* She reported her problems to Mr. Bush, who instructed her to park the bus and wait for assistance. *Id.* Ms. Smith remained at the scene approximately twenty minutes awaiting the arrival of a supervisor and mechanics. *Id.* Ms. Smith vomited on multiple occasions

---

[1] Because he was not listed as a witness on the REH form, the Court limited Mr. Hendrix's testimony to his introduction of subpoenaed records.

while waiting. *Id.* The supervisor took Ms. Smith to Parkridge Medical Center for emergent care. *Id.*

CARTA referred the handling of Ms. Smith's claim to its workers' compensation carrier. (Ex. 2 at 1.) An adjuster for the carrier offered Ms. Smith a panel, from which she selected Dr. Terry W. Smith. (Ex. 2 at 2.) Following treatment visits on April 17 and 20, 2015, Dr. Smith submitted a Statement of Activity Work Status form on which he marked the designation "Non-Determined" in response to an inquiry regarding the work-relatedness of Ms. Smith's alleged injury. (Exs. 2 at 3-4; 6 at 4; 12 at 3-4.) In his April 20, 2015 treatment note, Dr. Smith wrote, "I am unable to definitively say whether this is work related or not." (Ex. 2 at 13.)

On May 1, 2015, Dr. Smith noted he discussed the causation issue with the adjuster, who posed the causation question in terms of whether the injury was "50% of it related to workers' comp." In response, Dr. Smith stated, "[t]here is no way I can say causation." (Ex. 6 at 7.) Based on Dr. Smith's opinion, CARTA and its carrier denied Ms. Smith's claim on May 1, 2015. (Ex. 2 at 4, 21, 22.)

After the denial of her claim, Ms. Smith remained under Dr. Smith's care, but also sought treatment from Dr. Abdul Hafiz Eletr, a neurologist. (Exs. 6, 7.) On July 5, 2015, Dr. Eletr opined, in response to a causation letter sent by Ms. Smith's counsel, that the symptoms Ms. Smith experienced beginning April 10, 2015, were work-related. (Ex. 6 at 1.) In the same document, however, Dr. Eletr stated the work-relatedness of Ms. Smith's persistent headache and dizziness "this far out after [the] injury" was not as well-supported by the medical literature. *Id.*

On July 8, 2015, Dr. Smith submitted a report in which he stated that, based on a consultation with Dr. Eletr, Ms. Smith's "acute symptoms of dizziness, nausea, vomiting chest congestion, and headache is [sic] more than likely due to carbon monoxide/diesel fume exposure from the initial instance that is greater than 50%." (Exs. 5, 6 at 3.) CARTA's adjuster confirmed that she received Dr. Smith's July 8, 2015 report, but only after Ms. Smith had already filed her REH. (Ex. 2 at 5-6.)

Ms. Smith did not work from the date of injury until July 10, 2015. Dr. Smith restricted Ms. Smith from operating or driving machinery following visits on April 17, April 20, May 1, and June 5, 2015. (Exs. 6 at 6, 9, 22-23; 12 at 2-4.) Dr. Smith released Ms. Smith to return to work on July 8, 2015. (Exs. 6 at 4, 21; 12 at 1.)

Ms. Smith filed a PBD on May 18, 2015, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediation Specialist filed the DCN on June 30, 2015.

4

## Ms. Smith's Contentions

Ms. Smith contends she suffered a disabling exposure to diesel fumes on April 10, 2015, while operating a CARTA bus. She claims she is entitled to temporary disability benefits from April 11 to July 8, 2015. Ms. Smith also seeks reimbursement of out-of-pocket expenses for treatment of her alleged injury and authorization for on-going treatment.

## CARTA's Contentions

CARTA contends the Court should not consider the causation opinions of Drs. Smith and Eletr because it is unclear whether they stated their opinions in view of the causation definition set forth in the Workers' Compensation Law. CARTA also argues Dr. Smith's causation opinion is unreliable because he earlier opined Ms. Smith's injury was not work-related. As such, CARTA asserts Ms. Smith did not establish by medical expert opinion that her injury arose primarily in the course and scope of employment. Finally, CARTA contends Ms. Smith's absence from work from April 11 to July 10, 2015, may have resulted from a number of non-work-related conditions.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Court shall not construe the Workers' Compensation Law remedially or liberally in favor of either party, but shall construe the law fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor the employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

### Factual Findings

Upon consideration of the testimony of witnesses in open court, the exhibits admitted into evidence during the Expedited Hearing, and the argument of counsel for the parties, the Court makes the following factual findings:

- Ms. Smith was exposed to diesel exhaust while operating a CARTA bus on April 10, 2015;
- Ms. Smith experienced dizziness, light-headedness, headaches, difficulty

breathing, nausea, and vomiting after the exposure;

- Ms. Smith selected Dr. Terry Smith as her authorized treating physician (ATP) from a panel provided by CARTA's carrier;
- Dr. Smith restricted Ms. Smith from operating or driving machinery following visits on April 17, April 20, May 1, and June 15, 2015;
- Dr. Smith released Ms. Smith to return to work without restrictions on July 8, 2015;
- Ms. Smith returned to work on July 10, 2015;
- Ms. Smith's average weekly wage is $870.67;
- Ms. Smith's compensation rate is $580.44 per week.

### Preliminary Procedural Issue

In its response to Ms. Smith's REH, CARTA requested the Court continue the Expedited Hearing until Drs. Smith and Eletr have been deposed. The Court considered this request prior to the beginning of the Expedited Hearing.

The procedure set forth in Tennessee Comprehensive Rules and Regulations 0800-02-21-.14 (2014) contemplates the expeditious scheduling of an Expedited Hearing. This rule provides only five business days for the party opposing an REH to file responsive information. *See* Tenn. Comp. R. & Regs. 0800-02-21-.14(1)(b). The Court Clerk must compile and transfer the court file to the judge within seven days of the filing of an REH. *See* Tenn. Comp. R. & Regs. 0800-02-21-.14(1)(c).

Medical depositions routinely require months to schedule. The Court finds the delay of an Expedited Hearing for the scheduling of medical depositions is contrary to the intent of the rules that an employee who is not receiving benefits obtain a speedy hearing to address the denial of benefits. Accordingly, the Court overruled CARTA's request to continue.

### Application of Law to Facts

### Causation

The 2013 reforms to the Workers' Compensation Law imposed new evidentiary standards for proving the work-relatedness of an injury. Tennessee Code Annotated section 50-6-102(13)(A) (2014) provides, "[a]n injury is 'accidental' only if the injury is caused by a specific incident . . . arising primarily out of and in the course and scope of employment." Section 50-6-102(13)(B) provides, "[a]n injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Section 50-6-102(13)(C) requires

6

that the causation of an alleged work injury be "shown to a reasonable degree of medical certainty," and section 50-6-102(13)(E) affords the ATP's causation opinion a rebuttable presumption of correctness.

The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS ___ slip op. at 4 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015) (citing *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987)). At an Expedited Hearing, however, an employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing, supra.* Instead, an employee must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

At the Expedited Hearing, Ms. Smith presented substantial evidence corroborating her claim of exposure to diesel exhaust fumes while operating a CARTA bus on April 10, 2015. Ms. Smith's dispatcher, Duan Bush, testified that on April 10, 2015, Ms. Smith reported fumes in her bus. Mr. Bush stated he called the shop about the reported problem and then directed Ms. Smith to continue her route. He further testified that, fifteen to twenty minutes later, Ms. Smith called to report that she needed relief because she was sick, vomiting, and light-headed.

CARTA driver David Smith testified that he drove Bus 502 on April 6, 2015, and reported the strong presence of fumes. He testified the fumes made his eyes water and caused difficulty breathing. Mr. Smith swapped the bus out before the end of his shift due to the fume problem. CARTA drivers Lyndra Robinson and June Atkins testified they drove Bus 502 in May 2015, and were sickened when exposed to heavy fumes in the bus.

Ms. Smith's husband, Ronald Smith, is a CARTA mechanic. He testified he worked on Bus 502 prior to April 10, 2015, to diagnose reports of heavy fumes entering the bus during operation. Mr. Smith testified he diagnosed the cause of the fume problem on Bus 502 as clogged filters. Mr. Smith testified it was necessary to ship the bus to another company to fix the filter problem and, to his knowledge, the problem was not repaired before his wife's exposure to fumes on April 10, 2015.

Mr. Smith also testified that CARTA posted a memorandum, dated April 10, 2015, on an information board for mechanics. (Ex. 13.) The memorandum, identified a problem with missing bolts in the engine compartment covers of CARTA buses. The Memo continued, "do [sic] to this lack of proper maintenance an operator became ill this morning and was removed from Bus 502 and taken to the hospital." *Id.* Mr. Smith testified the engine compartments of CARTA's buses are not well-insulated, and that fumes enter the buses when engine compartment covers are not secured by bolts.

7

The Court finds Ms. Smith will likely prevail at a hearing on the merits that she suffered exposure to diesel exhaust fumes while driving a CARTA bus on April 10, 2015. The focus then becomes whether Ms. Smith has established by expert medical opinion that her exposure to diesel exhaust caused her alleged injury.

CARTA correctly points out that Dr. Smith initially did not state a causation opinion because he had no basis on which to give a definitive opinion because the emergency providers did not test Ms. Smith's blood for carbon monoxide. (Ex. 6 at 6-9, 14, 22-23.) In his May 1, 2015 treatment note, however, Dr. Smith wrote, "I am leaning more towards [the fact] she [Ms. Smith] did get a significant carbon monoxide exposure." (Ex. 6 at 9.) After taking into account Dr. Eletr's opinion that Ms. Smith's initial symptoms were related to her exposure to diesel exhaust (Ex. 7), Dr. Smith adopted the same opinion. (Exs. 5, 6 at 3.) The Court considers Dr. Smith's circumspection in arriving at his causation opinion a reason to trust his opinion, rather than a basis for distrusting it.

In his May 1, 2015 note, Dr. Smith wrote, "[c]onversation today with the adjuster. They are trying to get me to state whether 50% of it related to workers' comp . . ." (Ex. 6 at 7). In his causation report, Dr. Smith wrote Ms. Smith's symptoms are, "more likely due to carbon monoxide/diesel fume exposure from the initial instance *that is greater than 50%.*" (Ex. 5.) (Emphasis added.) Dr. Smith clearly considered the correct statutory standard in arriving at his causation opinion. The Court considers his causation opinion rebuttably correct.

Dr. Eletr's causation opinion is the same as Dr. Smith's and, as stated previously, Dr. Smith formulated his opinion in consideration of Dr. Eletr's opinion. (Ex. 5.) CARTA did not introduce an opinion that contradicted the opinions of Drs. Smith and Eletr. Accordingly, the Court finds Ms. Smith came forward with sufficient evidence at the Expedited Hearing to support a finding that, at a hearing on the merits, she will prevail in establishing that she suffered injury on April 10, 2015, when exposed to diesel exhaust fumes while driving a CARTA bus.

CARTA attempted to establish that non-work-related conditions caused Ms. Smith's symptoms. The Court is unpersuaded by this line of defense. The medical records admitted into evidence indicate Ms. Smith's doctors performed tests ruling out a number of potential non-work-related causes for the symptoms she experienced after her exposure to diesel exhaust fumes on April 10, 2015. On April 23, 2015, Ms. Smith underwent an abdominal ultrasound test for potential gallbladder disease, which was normal. (Ex. 9 at 21.) On May 5, 2015, Ms. Smith underwent a myocardial perfusion test, which was normal. (Ex. 9 at 17.) A June 25, 2015 MRI of the brain was normal. (Ex. 8 at 6.) The Court finds these tests support Drs. Smith's and Eletr's opinions that Ms. Smith suffered injury from her exposure to diesel exhaust fumes while driving a

CARTA bus on April 10, 2015.

*Temporary Partial Disability Benefits*

To establish a prima facie case for temporary total disability benefits, an employee must show that: (1) she was totally disabled and unable to work as a result of a compensable injury; (2) that a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's disability. *Gray v. Cullom Mach. Tool & Die, Inc.,* 152 S.W.3d 439, 443 (Tenn. 2004). Tennessee Code Annotated section 50-6-207(2) (2014) provides for temporary partial disability benefits based on the "difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition."

Dr. Smith restricted Ms. Smith from operating or driving machinery until he released her to return to work on July 8, 2015. (Exs. 6 at 4, 21; 12 at 1.) There is no proof that CARTA could accommodate those restrictions. In his May 1, 2015 note, Dr. Smith opined that, if Ms. Smith's CT scan of the head revealed negative results, he would release her to return to work. (Ex. 6 at 9.) Ms. Smith underwent an MRI of the brain on June 25, 2015, which was negative. (Ex. 8 at 6.) Dr. Smith released Ms. Smith to return to work following his visit of July 8, 2015, which was the visit following the receipt of the negative MRI results. (Ex. 6 at 4.) On this basis, the Court awards Ms. Smith temporary partial disability benefits from April 11 to July 8, 2015, a period of twelve weeks and five days.

The Wage Statement prepared by CARTA indicates Ms. Smith earned $35,465.34 in the fifty-two weeks preceding the date of injury. (Ex. 3.) The Wage Statement indicates Ms. Smith earned no income or substantially less income than normal in a continuous twelve-week period encompassed in the applicable fifty-two week earnings period. (Ex. 3.) Ms. Smith testified she missed work during the subject period of time due to leg surgery.

In *Russell v. Genesco,* 651 S.W.2d 206, 209 (Tenn. 1983), the Supreme Court approved language in its previous opinions that, "[w]here one regularly employed earns a given sum for a normal week it would be inequitable, in computing his compensation in case of accident, to include those weeks when, on account of illness or because the plant was shut down for repairs, his earnings are reduced." The Court accordingly will not add in the twelve-week period of reduced or no earnings in calculating Ms. Smith's compensation rate.

After removing the subject weeks, the Court calculates Ms. Smith's average weekly wage at $870.67, which equates to a compensation rate of $580.44 per week. Ms. Smith testified, without contravention, she did not work during the period Dr. Smith

restricted her from driving. Accordingly, the Court finds Ms. Smith was unable to earn a wage during the period from April 11, 2015, to July 8, 2015. The difference between the wage she was able to earn, zero, and her average weekly wage times two-thirds is $580.44 per week.

*Medical Benefits*

Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). Ms. Smith continued under Dr. Smith's care after CARTA denied her claim. Additionally, she came under the care of Dr. Eletr for neurologic care. The Court finds that, after CARTA denied her claim, Ms. Smith was justified in seeking medical care on her own without CARTA's approval. Under the circumstances, Ms. Smith may continue care of her compensable injury with either Dr. Smith or Dr. Eletr, or, at her election, a physician selected from a panel compiled by CARTA. *See generally Dorris v. INA Ins. Co.,* 764 S.W.2d 538, 540-41 (Tenn. 1989); *McCord v. Advantage Human Resourcing, supra,* at *7.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Ms. Smith's injuries shall be paid. CARTA or its workers' compensation carrier shall provide Ms. Smith with medical treatment for her injury as required by Tennessee Code Annotated section 50-6-204, to be initiated by CARTA or its workers' compensation carrier authorizing either Dr. Terry W. Smith or Dr. Abdul Hafiz Eletr as the ATP, or, if Ms. Smith requests, by providing her a panel of physicians as required by that statute. Ms. Smith and/or the medical providers shall furnish CARTA or its workers' compensation carrier medical bills for the charges incurred for compensable care.

2. The amount of temporary partial disability benefits is $580.44 per week based on the difference between the amount she was able to earn in her partially disabled condition and her average weekly wage.

3. Payment of past-due benefits of $7,379.88 shall be made for the period from April 11, 2015, to July 8, 2015, twelve weeks and five days.

4. This matter is set for an Initial Hearing on December 15, 2015, at 9:30 a.m. Eastern Time.

5. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code**

Annotated section 50-6-239(d)(3) (2014). **The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 26TH day of August, 2015.**

_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims** at 9:30 a.m. Eastern Time, on December 15, 2015. **You must call 615-741-3061 or toll-free at 855-747-1721 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order for Temporary Partial Disability and Medical Benefits was sent to the following recipients by the following methods of service on this the 26th day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Carmen Y. Ware, Attorney | | | X | cyware@thewarelawfirm.com |
| John Batson, Attorney | | | X | jbatson@watsonroach.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

13